# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

ROBERTA LAMBERT,      )
                                )
           Plaintiff,      )
                                )
v.                            )    Case No. 2:15-cv-04291-NKL
                                )
NEW HORIZONS COMMUNITY     )
SUPPORT SERVICES, INC.,      )
                                )
           Defendant.     )

## ORDER

Plaintiff Roberta Lambert, a former employee of Defendant New Horizons Community Support Services, has filed suit alleging negligent hiring, negligent training, negligent supervision, and race and employment discrimination under Title VII and 42 U.S.C. § 1981. Before the Court is New Horizons' Motion to Dismiss. [Doc. 6]. For the following reasons, the motion is granted in part and denied in part. Defendant's motion is granted on Plaintiff's Count II for negligent hiring, Count III for negligent training, and Count IV for negligent supervision; the motion is denied on Count I for race discrimination and Count V for employment discrimination.

1

# I.    Background[1]

In the months preceding June 2013, Roberta Lambert worked as a caseworker at New Horizons, a nonprofit organization that provides services to mentally and physically disabled individuals. Stacy Doggett, also a New Horizons employee, served as Lambert's Team A Supervisor during this relevant time.

In January 2013, Doggett directed Lambert to begin working with one of New Horizons' clients, referenced in the Complaint as "H.C." H.C. had previously made incendiary threats against caseworkers and was known for her violent nature. H.C. had also previously used racial epithets to describe African-Americans. Due to this behavior, Doggett wanted H.C. to leave the program, and so she decided to place H.C. with Lambert, an African-American. The Complaint quotes Doggett stating: "I have a perfect plan to get [H.C.] out of the program. Since she is so racist, let's put her with [Lambert], and then she will quit." [Doc. 1, p. 4, ¶ 15].

At Doggett's assignment, Lambert began providing client services to H.C. On March 26, 2013, H.C. attacked and injured Lambert.

After exhausting her administrative claim, Lambert filed her present suit seeking consequential and punitive damages. Her Complaint asserts the following counts:

I.     Race Discrimination under 42 U.S.C. § 1981
II.    Negligent Hiring
III.   Negligent Training
IV.    Negligent Supervision
V.     Employment Discrimination under Title VII

---

[1] These facts appear in Lambert's Complaint. [Doc. 1]. For purposes of deciding New Horizons' Motion to Dismiss, the Court accepts Lambert's factual allegations as true and construes them in the light most favorable to her. *See Stodghill v. Wellston Sch. Dist.,* 512F.3d 472, 476 (8th Cir. 2008).

## II.     Discussion

New Horizons urges the Court to dismiss Lambert's Complaint in its entirety, arguing that she has not, on any of her counts, stated a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable" level, *Twombly*, 550 U.S. at 547, and "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.  Such a complaint will be liberally construed in the light most favorable to the plaintiff.  *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2008).  While this pleading standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) is therefore appropriate when a complaint fails to allege facts establishing each element of its claims.  *Id.* at 678–80; *Twombly*, 550 U.S. at 555–56.  A pleading that offers labels, bare assertions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is insufficient to avoid dismissal.  *Iqbal*, 556 U.S. at 678.

### A.  Race Discrimination

Lambert alleges that New Horizons, in assigning her a client who displayed racial animus against African-Americans, violated Title VII and 42 U.S.C. § 1981 by "bas[ing] [this decision] on racial grounds" and "plac[ing] her in danger based on race." [Doc. 1, pp. 4, 9, ¶¶ 15, 38].

Title VII and Section 1981 race discrimination claims are examined under the same framework.  *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1196 (8th Cir. 2006); *see also Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 863 n.3 (8th Cir. 2008) (noting that because the plaintiff's "Title VII and § 1981 claims 'set forth parallel, substantially identical, legal theories of recovery,' we apply the same analysis to both."). A cause of action for discrimination requires the plaintiff to show "'(1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently'" or the circumstances give rise to an inference of discrimination.  *Smith v. URS Corp.*, 803 F.3d 964, 969 (8th Cir. 2015) (*quoting Fields*, 520 F.3d at 864); *see also Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).  Defendant contends that Lambert has failed to sufficiently plead elements three and four.

An adverse employment action is a "tangible change in working conditions that produces a material employment disadvantage."  *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005).  A material disadvantage may include "actions short of termination" such as "a change in salary, benefits, or responsibilities."  *Tademe v. Saint Cloud State*

4

*Univ.*, 328 F.3d 982, 992 (8th Cir. 2003). Not every employment action rises to this level, however. *See Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (finding that plaintiff's forced relocation, while "unpalatable . . . to him," "did not rise to the level of an adverse employment action"). Rather, the action must "significantly affect an employee's future career prospects." *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). "Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case." *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).

Lambert does not claim that New Horizons changed her salary, benefits, or job responsibilities. She argues instead that "Defendant assigned Plaintiff to work with an individual consumer and client known as H.C., who was known to threaten caseworkers, refer to African Americans as 'niggers' and to be violent." [Doc. 1, p. 3]. Defendant subsequently assigned Lambert to work with H.C. without informing her of H.C.'s past actions and threats. On March 26, 2013, H.C. attacked Lambert causing her injury and monetary losses.

Lambert's allegations are different from most claims alleging racial discrimination under Title VII and Section 1981. However, this does not prevent Lambert's Complaint from stating a cognizable claim for racial discrimination if the alleged adverse employment action amounts to "a tangible change in working conditions that produces a material employment disadvantage." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 671 (8th Cir. 2006) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)).

5

The Eighth Circuit's decision in *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661 (8th Cir. 2006), suggests that Lambert's allegations are sufficient for her to maintain the race discrimination claims at this early stage of litigation. In *Wedow*, two female firefighters brought an employment discrimination action against the City of Kansas City based upon alleged sex discrimination. The evidence in *Wedow* showed that the City required the women to wear ill-fitting male firefighting clothing, even though female clothing and gear was available and known to management officials. Because the clothing did not fit properly, the women suffered injuries while at work. The women were also provided with inadequate restrooms, showers, and private changing facilities. The evidence showed that these facilities were necessary to maintain good health while serving 24-hour shifts.

At trial, the *Wedow* plaintiffs prevailed on their discrimination claims. In addressing the City's claims that the district court erred in failing to grant its motion for judgment as a matter of law, the Eighth Circuit concluded that "[t]he record amply demonstrates that the terms and conditions of a female firefighter's employment are affected by a lack of adequate protective clothing and private, sanitary shower and restroom facilities, because these conditions jeopardize her ability to perform the core functions of her job in a safe and efficient manner." *Id.* at 671-72. The circumstances surrounding the plaintiffs' work as firefighters "combine[d] to make the provision of adequate protective clothing and facilities integral terms and conditions of employment for a firefighter." *Id.* at 672. Therefore, the Eighth Circuit concluded that the district

court did not err in denying the City's motion for judgment as a matter of law on the discrimination claim and allowed the jury verdict to stand.

In light of the Eighth Circuit's decision in *Wedow*, the Court cannot say that Lambert states no plausible claim for relief. Lambert has alleged Defendant intentionally placed her in a dangerous situation working with H.C. without informing her of the danger or adequately protecting her to prevent the injury and monetary losses. While the evidence of discrimination in *Wedow* was more developed than Lambert's, at the time the Eighth Circuit addressed the case the *Wedow* plaintiffs had the benefit of having been through the full course of discovery and a trial. The question now before the Court is not whether Lambert will definitively win on her claims of discrimination, but whether the existing allegations are such that they state a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. Lambert's allegations are sufficient at this juncture to demonstrate conditions which may have jeopardized her ability to perform her job in a safe and efficient manner. Moreover, as New Horizons is a nonprofit providing services for mentally and physically handicapped individuals, Lambert may through discovery be able to demonstrate that an essential term and condition of her employment is being provided the known scope of information on clients, particularly where the known characteristics of a client may threaten an employee's safety. Therefore, Lambert has sufficiently alleged that she suffered an adverse employment action.

In order to maintain her claim, Lambert must also be able to demonstrate that the circumstances give rise to an inference of discrimination. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010); *see also Smith*, 803 F.3d at 969.

7

As discussed above, Lambert alleges that Doggett placed her with H.C., a dangerous client, specifically because of Lambert's race. *See* [Doc. 1, p. 4, ¶ 15]. ("Since [H.C.] is so racist, let's put her with [Lambert]."). This allegation offers a clear causal link between Lambert's race and Doggett's decision to place her with H.C. *See King v. Hardesty*, 517 F.3d 1049, 1058 (8th Cir. 2008) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (evidence of discrimination includes "comments which demonstrate a discriminatory animus in the decisional process."). It also claims that Lambert was treated differently from other races of employees because she is black. Moreover, it was Doggett's decision to assign Lambert to H.C. which resulted in Lambert's alleged injury. Given the specific causal connection between Doggett's alleged statement, Lambert's assignment to H.C., and Lambert's alleged injury, these allegations are sufficient to give rise to an inference of discrimination.

New Horizons finally contends that at minimum Lambert's Title VII claim should be dismissed because she did not file a Charge of Discrimination within 300 days of the alleged discriminatory act as required by 42 U.S.C. § 2000e-5(e)(1). According to the Complaint, New Horizons placed Lambert with H.C. in January 2013, and she did not file a Charge of Discrimination until December 20, 2013. However, the Complaint also alleged that H.C. attacked Lambert on March 26, 2013. According to § 2000e-5(e)(3)(A), an unlawful discriminatory employment practice may occur "when an individual is affected by application of a discriminatory compensation decision or other practice . . . ." As Lambert's Complaint clearly alleges that she suffered the effects of the

Case 2:15-cv-04291-NKL   Document 27   Filed 04/18/16   Page 8 of 13

discrimination on March 26, 2013, approximately 269 days before she filed her Charge of Discrimination, her claim under Title VII is not time barred.

## B. Negligent Hiring

In her Complaint, Lambert contends New Horizons negligently hired Doggett "by failing to investigate adequately the background and abilities of its supervisors." [Doc. 1, p. 5, ¶ 21]. Arguing that Lambert has not pled the elements of negligent hiring, New Horizons asks the Court to dismiss this claim.

In Missouri, a plaintiff states a prima facie case of negligent hiring by pleading that "(1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997). An employer's knowledge of the employee's dangerous proclivities is based upon "prior acts of misconduct." *Reed v. Kelly*, 37 S.W.3d 274, 277 (Mo. Ct. App. 2000). In other words, in order to maintain a negligent hiring claim, a plaintiff must allege that the employee demonstrated dangerous proclivities *before* committing the act that caused the injury at issue. *See Moreland v. Farren-Davis*, 995 S.W.2d 512, 517 (Mo. Ct. App. 1999) ("The motion failed to allege facts as to whether [the employer], prior to the stabbing, [was] aware of [the employee's] dangerous proclivities.").

Because Lambert states she "was injured when Doggett placed H.C. and [Lambert] together," her Complaint must allege that New Horizons knew or should have known of Doggett's dangerous proclivities before that time. Yet Lambert does not allege Doggett committed any prior acts of misconduct. She argues only that "Doggett

9

exemplified the dangerous proclivity of the continued inattention to and a denial of the gravity of [H.C.'s] previous violent behavior, despite being so informed by other employees." [Doc. 11, p. 5]. While this statement suggests New Horizons and Doggett may have known about H.C.'s violent nature, it does not allege any preexisting dangerous proclivity exhibited by Doggett herself.

Therefore, Lambert cannot maintain a claim for negligent hiring. Count II is dismissed with prejudice.

### C. Negligent Supervision

Similarly, Lambert also asserts a count of negligent supervision on the grounds that "New Horizons . . . fail[ed] to provide the necessary supervision" over Doggett. [Doc. 1, p. 7, ¶ 33]. Missouri has adopted the Restatement (Second) of Torts for negligent supervision claims in the employer-employee context. *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 87 (Mo. Ct. App. 2012). According to the Restatement, a claim is established under the following circumstances:

> A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965).

Missouri courts interpret these elements to "require evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Reed*, 37 S.W.3d at 278. Consequently, as with a negligent hiring claim, plaintiffs must allege that past acts should have led the employer to foresee the employee's conduct. *Id.* (emphasizing that both negligent supervision and negligent hiring contain this element of foreseeability).

Lambert therefore cannot maintain her negligent supervision claim. Again, as indicated above, she has not alleged that New Horizons had any reason to foresee Doggett's actions. Count IV is dismissed with prejudice.

### D. Negligent Training

New Horizons finally argues that Lambert has not plausibly pled a claim for negligent training. According to New Horizons, Lambert's Complaint does not offer any facts regarding the training, or lack thereof, that Doggett allegedly received.

Under Missouri law, "negligent failure to provide adequate training is . . . recognized as a variant of the common law tort of negligence." *Vasquez v. Hill*, 2012 WL 6568474, at *5 (E.D. Mo. Dec. 17, 2012). Plaintiffs must therefore allege "(1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; (4) actual damages to the plaintiff's person or property." *Braxton v. DKMZ Trucking, Inc.*, 2013 WL 6592771, at *3-4 (E.D. Mo. Dec. 16, 2013) (*citing Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1984)). When assessing these elements on a motion to dismiss, courts have looked

for factual allegations regarding the training that the employer provided. *See id.* ("The Court again notes that the only factual allegations made relate to the accident that occurred on January 11, 2013. There is not a single fact related to [the employer's] training of [the employee]. The negligent training claim is therefore not facially plausible.").

Lambert has not met this bar. Instead, she has offered only the conclusory allegations that "New Horizons owed a duty to [Lambert] to provide training to any of their supervisors," "New Horizons failed to provide training to their employee, Doggett, on how to protect and care for [New Horizons'] customers," and as a result "[Lambert] was injured when Doggett failed to protect and care for [New Horizons'] customers." [Doc. 1, p. 6, ¶¶ 26, 27, 28]. Beyond these base assertions Lambert alleges no facts about the training Doggett received, and consequently the Court cannot say Lambert has stated a plausible ground for relief. *See Clevenger v. Howard*, 2015 WL 7738372, at *5 (W.D. Mo. Nov. 30, 2015) (dismissing a negligent training claim because "the only statements in the petition which touch on improper training of [employee] are legal conclusions, not factual allegations, resulting in a factually unsupported claim.").

Lambert's claim of negligent training (Count III) is dismissed with prejudice.

## III. Conclusion

For the foregoing reasons, Defendant New Horizons' Motion to Dismiss [Doc. 6] is granted in part and denied in part. Defendant's motion is granted on Plaintiff's Count II for negligent hiring, Count III for negligent training, and Count IV for negligent

12

supervision; the motion is denied on Count I for race discrimination and Count V for employment discrimination.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 18, 2016
Jefferson City, Missouri